[Cite as *State v. Allen*, 2026-Ohio-1440.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

     Appellee

v.

SHAWN ALLEN

     Appellant

C.A. Nos.    30385
                 31166

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2020-08-2023

DECISION AND JOURNAL ENTRY

Dated: April 22, 2026

---

CARR, Presiding Judge.

{¶1}	Defendant-Appellant, Shawn Allen, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}	Allen was involved in an altercation with a man outside a bar. The man, later identified as H.L., was pushing his twenty-one-month-old daughter, A.T., in a stroller when he and Allen encountered one another. Following the altercation, H.L. grabbed A.T.'s stroller and ran away with her in it as Allen and a friend chased after him on foot. Allen and his friend eventually gave up and returned to the area of the bar where Allen had parked his SUV. Allen got in the driver's seat while his friend and a female acquaintance joined him as passengers.

{¶3}	Allen began driving around the area looking for H.L. A bystander who had witnessed their altercation observed him screaming out his window as he drove, asking where H.L. had gone. Allen also told the female inside his SUV that he was "going to find . . . this MF . . . ."

Surveillance footage from area businesses captured Allen's SUV traveling around the surrounding area as well as the path H.L. had taken.  Several minutes after their initial encounter, Allen spotted H.L. and used a nearby parking lot to reach him.  Surveillance footage showed Allen rapidly accelerating as H.L. tried to run while pushing the stroller.  It showed Allen's SUV striking H.L., the stroller, and A.T.  The bodies of H.L. and A.T. were discovered the following morning.

{¶4}    Allen was indicted on three counts of aggravated murder,[1] two counts of murder, failure to stop after a nonpublic road accident, tampering with evidence, and two counts of gross abuse of a corpse.  A supplemental indictment later issued, adding several capital specifications.  Before the counts and specifications were submitted to the jury, the State dismissed the count for failure to stop after a nonpublic road accident.

{¶5}    The jury found Allen not guilty of his two counts of gross abuse of a corpse.  They found him guilty of his remaining counts.  Following the mitigation phase of his trial, the jury declined to recommend a death sentence.  The trial court merged several of Allen's counts as allied offenses of similar import and imposed consecutive prison terms on his remaining counts.  The court sentenced him to a total of 63 years to life in prison.

{¶6}    Allen moved for a new trial and, before the court ruled on his motion, he filed an appeal from his judgment of conviction.  The trial court found that the appeal divested it of jurisdiction to rule on the motion for new trial.  This Court then issued a limited remand to the trial court for the purpose of allowing it to rule on Allen's motion for new trial.  *See State v. Allen*, 9th Dist. Summit No. 30385 (Sept. 13, 2023).  Following our remand, the trial court denied Allen's

---

[1] Two of the aggravated murder counts pertained to A.T. and were charged under alternative subsections.

motion, and Allen filed a second appeal to contest that judgment. This Court consolidated the two appeals for argument and decision.

{¶7} Allen now appeals from the trial court's judgment and raises ten assignments of error for review. For ease of analysis, we rearrange several of the assignments of error.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY DENYING ALLEN'S MOTION TO DISMISS ON SPEEDY TRIAL GROUNDS AND VIOLATED THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION[.]

{¶8} In his first assignment of error, Allen argues the trial court should have dismissed his charges due to an alleged violation of his speedy trial rights. For the following reasons, we reject his argument.

{¶9} "The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial." *State v. Blackburn*, 2008-Ohio-1823, ¶ 10. "A trial court's determination of speedy trial issues presents a mixed question of law and fact." *State v. Jaeger*, 2018-Ohio-2994, ¶ 5 (9th Dist.). "Therefore, we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts de novo." *State v. Long*, 2020-Ohio-5363, ¶ 15.

{¶10} "[T]he Ohio Supreme Court has held that a defendant's constitutional right to a speedy trial is coextensive with his statutory rights, except in some limited circumstances . . . ." *Jaeger* at ¶ 10. A person charged with a felony generally must be brought to trial within 270 days of arrest or, if incarcerated, within 90 days of arrest under R.C. 2945.71's triple-count provision. R.C. 2945.71(C)(2), (E). Speedy trial time "may be extended . . . for a number of reasons, which

are commonly referred to as tolling events." *State v. Reeda*, 2025-Ohio-4652, ¶ 4 (9th Dist.). Additionally, a defendant may knowingly and voluntarily waive his right to a speedy trial by executing a waiver of limited or unlimited duration. *Jaeger* at ¶ 8. If a written waiver "fails to include a specific date as the starting point for the tolling of time, the waiver is deemed to be effective from the date of arrest." *State v. Bray*, 2004-Ohio-1067, ¶ 8 (9th Dist.). If the waiver "fails to specify an expiration date, it constitutes an unlimited waiver." *State v. Brown*, 2021-Ohio-2540, ¶ 10 (9th Dist.).

{¶11} A defendant who executes an unlimited waiver "is not entitled to a discharge for delay in bringing him to trial unless [he] files a formal written objection and demand for trial . . . ." *State v. O'Brien*, 34 Ohio St.3d 7 (1987), paragraph two of the syllabus. If the defendant succeeds in revoking his unlimited waiver, "the strict requirements of [R.C. 2945.71] no longer apply." *State v. Skorvanek*, 2009-Ohio-3924, ¶ 14 (9th Dist.). Instead, the defendant must be brought to trial "within a reasonable time." *O'Brien* at paragraph two of the syllabus. "A delay in excess of one year is presumptively prejudicial and triggers a four-part balancing test." *State v. Brown*, 2023-Ohio-2909, ¶ 8 (9th Dist.).

{¶12} Allen was arrested on July 17, 2020, and remained incarcerated until his trial began on May 2, 2022. He filed several motions after his arrest and, on September 14, 2020, he executed a waiver of his speedy trial rights. The waiver did not include any specific starting or ending points to limit its duration. It provided that Allen knowingly and voluntarily waived his speedy trial rights and "consent[ed] to the continuance of [his] case within a reasonable time."

{¶13} After Allen executed his waiver, a supplemental indictment issued. An arraignment on the supplemental indictment occurred on October 13, 2020. Because the supplemental indictment charged Allen with several capital specifications, the trial court appointed him a second

attorney to act as lead counsel and to serve alongside his previously appointed attorney. The parties informed the court that they were still waiting for at least one evidentiary report. Additionally, defense counsel admitted they were not yet prepared to go to trial, and the court expressed concerns about performing jury selection and trying a capital case during the pandemic. The defense argued that Allen's speedy trial waiver applied to the supplemental indictment, so he had already waived time. Nevertheless, the court asked Allen to execute a second waiver out of an abundance of caution. Allen, who appeared via live stream, agreed he would sign another waiver.

{¶14} Three days later, the parties once again came before the court, and the court learned that Allen had refused to sign a second waiver. His attorneys indicated that they still had to file over 50 motions, all of which would toll time. Additionally, defense counsel maintained that Allen's initial waiver applied to the supplemental indictment. Because the hearing could not be completed, the court scheduled an additional hearing for the following week.

{¶15} At the additional hearing, defense counsel once again argued that a second time waiver was unnecessary because Allen had already agreed to waive his speedy trial rights. Defense counsel acknowledged that discovery was incomplete, motion practice was required, and the defense would need a reasonable continuance before any trial. After further discussion, one of Allen's attorneys asked Allen if he would sign a second waiver to simplify matters so that the defense had enough time to prepare. Allen agreed to do so.

{¶16} The defense filed a significant number of motions before the parties next came before the court on December 3, 2020. At that hearing, the court indicated that it was in receipt of Allen's second waiver and would file it after the hearing. The second waiver, filed on December 4, 2020, provided that Allen knowingly and voluntarily waived his right to have his case tried

within the statutory time period. It also provided that he agreed to the continuance of his case "within a reasonable time during May, 2021 – June, 2021." The second waiver did not include a starting point.

{¶17} The trial court initially set Allen's trial for June 2021. In March 2021, however, defense counsel moved for a continuance. Counsel noted that Covid restrictions at the jail had made it impossible for potential defense experts to meet with Allen. While Allen did not wish to continue his trial date, defense counsel informed the court that there was "no way" their experts could be ready by June. Due to the pandemic, restrictions at the jail, the continuance requested by the defense, and the other pending cases on the court's calendar, the court continued the trial until October 2021. The court found Allen's "waiver of speedy trial rights filed in this matter . . . extended through November, 2021."

{¶18} The court continued to meet with the parties in March, June, and July 2021. By mid-July, defense counsel informed the court that their experts' reports might be delayed until mid-September. Defense counsel cited the pandemic and the difficulties they were having getting their experts to meet with Allen at the jail, particularly because he was not vaccinated. The court met with the parties on September 10, 2021, to review pending motions and spoke with Allen about getting vaccinated. There was no discussion about Allen's speedy trial rights.

{¶19} Seven days later, on September 17, 2021, Allen filed a pro se motion to dismiss his case because his trial had not gone forward in June 2021. The trial court denied his motion because Allen did not have a right to hybrid representation. The court noted that Allen had two attorneys and, as such, any motions he might wish to file had to be filed through them.

{¶20} On September 23, 2021, the parties came before the court for a scheduled hearing, and defense counsel requested a continuance of the trial date. Although Allen did not want his

trial to be continued, his attorneys indicated that they were waiting on certain records and still needed an important expert to meet with Allen. Defense counsel noted that there was a new, highly contagious Covid variant and their expert was hesitant to meet with Allen because Allen refused to be vaccinated. An extensive discussion ensued, and the court spoke with Allen about the importance of meeting with his expert and allowing his counsel enough time to prepare an effective defense. The court ultimately continued the trial until May 2, 2022. Between the September 23rd hearing and the May 2nd trial date, the defense continued to file motions.

{¶21} A few days before the scheduled trial date, defense counsel filed a motion to dismiss "based upon the fact that [Allen's] [t]rial date of May 2, 2022, has exceeded the statutory limitations of the Ohio Speedy Trial Act." The motion did not include a supporting memorandum. When the parties came before the court for trial, the court allowed defense counsel to argue the motion on the record. Defense counsel stated: "we would indicate to the court that based upon Ohio law we believe that [] Allen's constitutional rights to a speedy trial have been violated and we're asking that the case be dismissed." Following that statement, the court allowed the State an opportunity to respond. The State noted that Allen had executed time waivers and had filed numerous motions that otherwise tolled his time. The court agreed with that rationale and noted that defense counsel had requested continuances to prepare their expert(s). The court denied Allen's motion to dismiss.

{¶22} Allen argues the trial court erred when it denied his motion to dismiss. He admits that he executed time waivers but argues that they expired in June 2021. He notes that he asserted his speedy trial rights in the pro se motion to dismiss that he filed in September 2021. He also notes that, when he appeared for hearings, he expressed his personal disagreement with any continuances. According to Allen, the trial court violated his speedy trial rights when it continued

the trial over his objections. In his reply brief, he also argues for the first time that (1) the State was required to secure a second time waiver from him in the wake of his supplemental indictment, and (2) his speedy trial time expired before he executed that waiver.

{¶23} We begin by addressing the argument set forth in Allen's reply brief. As noted, he did not make that argument in the lower court. In fact, he repeatedly argued that he did not need to execute a second waiver because his first waiver applied to the new specifications in his supplemental indictment. Assuming without deciding that he did not waive or invite any alleged error that might have occurred by virtue of the position he took on that issue, this Court will not consider arguments raised for the first time on appeal. *State v. Ullman*, 2022-Ohio-4683, ¶ 18 (9th Dist.). Nor will we consider new issues raised in a reply brief. *State v. Caldwell*, 2013-Ohio-1417, ¶ 9 (9th Dist.). Because the new argument presented in Allen's reply brief is not properly before us, we will not consider it.

{¶24} The first waiver Allen signed did not contain a starting or ending point, making it a waiver of unlimited duration. *See Brown*, 2023-Ohio-2909, at ¶ 7 (9th Dist.). When his supplemental indictment issued, his attorneys requested additional time to prepare. Allen then signed a second waiver that waived time until June 2021. Thereafter, his attorneys repeatedly requested continuances to allow them to prepare and to allow their experts to meet with Allen. They also engaged in significant motion practice throughout the pretrial period. Defense counsel did not move to dismiss the case for an alleged violation of Allen's speedy trial rights until a few days before trial. When they did so, they did not provide any analysis or law in support of their motion.

{¶25} On appeal, Allen appears to argue that his speedy trial rights were violated because his second waiver expired in June 2021, he was not brought to trial within 90 days, and he

personally objected to any continuances. Yet his analysis is lacking in several respects. First, he has not addressed the effect of the first waiver he executed, which was a waiver of unlimited duration. *See id.* at ¶ 8 (discussing the effect of an unlimited waiver and, if formally withdrawn, the resulting effect on the speedy trial analysis a court is to perform). Second, assuming Allen's statutory speedy trial rights continued to apply, he has not addressed any of the tolling events that occurred herein and how they may have affected his speedy trial count. *See* R.C. 2945.72 (listing various tolling events). Finally, Allen has not explained why any continuances the trial court granted at the behest of his attorneys were not binding on him. *See State v. McBreen*, 54 Ohio St.2d 315 (1978), syllabus (defendant is bound by speedy trial waiver executed by his attorney without his consent).

{¶26} "An appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority." *State v. Watson*, 2009-Ohio-330, ¶ 5 (9th Dist.), citing App.R. 16(A)(7). We will not construct an argument on an appellant's behalf. *State v. Drummer*, 2025-Ohio-4710, ¶ 12 (9th Dist.); *State v. Baskerville*, 2017-Ohio-4050, ¶ 52 (9th Dist.). Because Allen has not provided this Court with an analysis in support of his assignment of error, we decline to perform an analysis on his behalf. His first assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY DENYING ALLEN'S MOTION TO REPRESENT HIMSELF VIOLATING DEFENDANT'S FEDERAL AND OHIO CONSTITUTION SIXTH AMENDMENT RIGHTS TO SELF REPRESENTATION WAIVER OF COUNSEL AND VIOLATION OF CRIMINAL RULE 44[.]

{¶27} In his fourth assignment of error, Allen argues the trial court erred when it refused to let him represent himself at trial. For the following reasons, we reject his argument.

{¶28} "[A] criminal defendant has a constitutional right to self-representation." *State v. Perry*, 2011-Ohio-2242, ¶ 11 (9th Dist.), citing *Faretta v. California*, 422 U.S. 806, 819 (1975). A defendant "'may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so.'" *State v. Schleiger*, 2014-Ohio-3970, ¶ 18, quoting *State v. Gibson*, 45 Ohio St.2d 366, (1976), paragraph one of the syllabus. "If a trial court denies the right to self-representation when the right has been properly invoked, the denial is per se reversible error." *State v. Neyland*, 2014-Ohio-1914, ¶ 71. Nevertheless, "a strict standard must be applied when determining the adequacy of a criminal defendant's invocation of the right to self-representation." *Perry* at ¶ 11. "'[C]ourts [must] indulge in every reasonable presumption against waiver' of the right to counsel . . . ." (Second alteration in original.) *State v. Hundley*, 2020-Ohio-3775, ¶ 103, quoting *Brewer v. Williams*, 430 U.S. 387, 404 (1977). "The assertion of the right to self-representation must be clear and unequivocal." *Neyland* at ¶ 72.

{¶29} Allen's two attorneys had already represented him for more than a year when the parties came before the court in November 2021 for a status conference. During the status conference, the court indicated that it had received a letter from Allen. The letter was never filed, but the court said Allen was "asking to represent himself alleging ineffective assistance of counsel due to delays in trial, failure to provide high quality representation." The court addressed Allen and spoke in support of the work his attorneys had done on his behalf. The court expressed doubt that Allen had the capacity to represent himself. It also informed him that it did not have sufficient time to address his request at the status hearing. The court told Allen that it was denying his request but, "if [he] want[ed] to have a separate hearing on this after [he] had continued conversations with [his] attorneys, [they could] have a separate hearing . . . ." Allen did not

respond to the court's statements. Nor did he move for a separate hearing to further address the issue.

{¶30} About five months later, the parties came before the court for another status hearing. The court informed the parties that it had received a pro se motion from Allen. The motion was never filed, but the court indicated that it was "a request to remove [one of Allen's attorneys] and appoint new counsel . . . ." The court explained why it was not inclined to grant the motion but allowed Allen an opportunity to voice his concerns. Allen told the court that he felt his attorneys were not "on the same page[.]" He also claimed that the attorney he sought to remove had made unprofessional comments. Allen never asked to represent himself. He only asked the court to appoint him new counsel.

{¶31} On appeal, Allen argues that he made an unequivocal request to represent himself in this matter. He claims that, at the November 2021 status conference, he expressed his desire to waive his right to counsel and represent himself. Additionally, he argues that the letter he mailed to the court before that status conference contained an unequivocal request to represent himself. He argues that the trial court committed per se reversible error by failing to hold a hearing on his request and by not allowing him to represent himself.

{¶32} The record does not support Allen's claim that he expressed his desire to waive his right to counsel at the November 2021 status conference. During the status conference, Allen remained entirely silent on that issue. The trial court was the only one to briefly address it, prompted by a letter Allen apparently sent directly to the court. While the trial court indicated that the letter contained a request for Allen to represent himself, the court described the letter as alleging ineffective assistance of counsel due to delays in the trial and an alleged lack of "high quality representation." "This Court has held that 'a request [to represent oneself] is not

unequivocal if it is made as an expression of frustration . . . ." (Alteration in original.) *State v. Gilbert*, 2025-Ohio-4623, ¶ 23 (9th Dist.), quoting *State v. Higgins*, 2018-Ohio-476, ¶ 32 (9th Dist.). *Accord Neyland*, 2014-Ohio-1914, at ¶ 73. Because Allen's letter was never filed, it is not a part of the record, and it is impossible to know whether it contained a clear and unequivocal invocation of Allen's right to represent himself. *See Neyland* at ¶ 72. Notably, Allen never addressed the trial court regarding his letter, asked for a separate hearing, or sought to represent himself following the status conference. In fact, he later asked the court to appoint him new counsel. Had Allen unequivocally desired to represent himself, it is difficult to understand why he would have requested new counsel. Allen has not addressed that apparent inconsistency.

{¶33} As noted, "'courts [must] indulge in every reasonable presumption against waiver' of the right to counsel . . . ." (Alteration in original.) *Hundley*, 2020-Ohio-3775, at ¶ 103, quoting *Brewer*, 430 U.S. at 404. Based on the record before us, we cannot conclude that Allen ever clearly and unequivocally invoked his right to self-representation. *See Neyland* at ¶ 72. Thus, Allen has not shown that the trial court denied him that right. His fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR II

A TRIAL COURT VIOLATES A DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL PURSUANT TO THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION[] WHEN GUILTY VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE[.]

{¶34} In his second assignment of error, Allen argues that his convictions are based on insufficient evidence. Specifically, he argues that the State failed to set forth any evidence in support of the element of prior calculation and design. For the following reasons, we reject his argument.

{¶35} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶36} Allen was convicted of two counts of aggravated murder under R.C. 2903.01(A), one count of aggravated murder under R.C. 2903.01(C), two counts of murder, one count of tampering with evidence, and two counts of gross abuse of a corpse. His sufficiency argument only concerns the element of prior calculation and design. That element is only relevant to his aggravated murder convictions under R.C. 2903.01(A). Accordingly, in addressing his argument, we limit our review to those two convictions and the element of prior calculation and design.

{¶37} A person is guilty of aggravated murder if he "purposely, and with prior calculation and design, cause[s] the death of another . . . ." R.C. 2903.01(A). "'Prior calculation and design' denotes 'sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation' coupled with circumstances that demonstrate 'a scheme designed to implement the calculated decision to kill.'" *State v. Guerra*, 2013-Ohio-5367, ¶ 6 (9th Dist.), quoting *State v. Cotton*, 56 Ohio St.2d 8 (1978), paragraph three of the syllabus. "No bright-line test exists that 'emphatically distinguishes between the presence or absence of 'prior calculation and design.'" *State v. Maxwell*, 2014-Ohio-1019, ¶ 148, quoting *State v. Taylor*, 78 Ohio St.3d 15, 20 (1997). While "instantaneous deliberation" is not enough, *Cotton* at 11, "this does not mean that a

considerable amount of time must lapse between formulating the plan and committing the murder." *State v. Roberts*, 2025-Ohio-5120, ¶ 145. "The question is whether the defendant acted with advance reasoning and purpose to kill." (Cleaned up.) *Id.* at ¶ 146.

> Relevant circumstances include: (1) whether "the accused and victim [knew] each other, and if so, [whether their] relationship [was] strained"; (2) whether the accused gave "thought or preparation to choosing the murder weapon or murder site"; and (3) whether "the act [was] drawn out or an almost instantaneous eruption of events."

*State v. Wong*, 2016-Ohio-96, ¶ 15 (9th Dist.), quoting *Taylor* at 19. The foregoing factors are "'pertinent,'" but by no means exclusive. *Roberts* at ¶ 147, quoting *State v. Walker*, 2016-Ohio-8295, ¶ 40 (O'Donnell, J., dissenting). "[E]ach case turns on the particular facts and evidence presented at trial." *Taylor* at 20.

{¶38} Allen has presented this Court with an extremely limited sufficiency argument on appeal. He argues that there was no evidence of prior calculation and design because "[t]his was an event committed by an unknown that occurred in a few seconds . . . ." He asserts that there was no evidence the event was "drawn out" or the result of any advanced planning by anyone. Apart from those broad statements, he has not discussed any of the evidence presented herein. With his limited argument in mind, we briefly summarize the evidence produced at trial.

{¶39} The jury heard testimony that Allen drove a black Cadillac Escalade with an after-market blue lighting kit attached to its bottom. They heard testimony that he drove a female date and another man to a bar in Akron to meet his sister and several others. The evidence showed that, when Allen left the bar, he had an altercation with a man pushing a stroller. Surveillance videos captured Allen chasing the man with the stroller through a parking lot before stopping and returning to the area where he had parked his SUV. The evidence showed that Allen, his female date, and another man entered the SUV. The jury heard testimony that Allen then began searching

the area for the man with the stroller. A bystander who recognized Allen from the altercation testified that she heard him screaming out the window of his SUV, asking where the man had gone. They female inside the SUV also testified that she heard Allen saying he was "going to find . . . this MF . . . ." Surveillance videos captured the SUV driving around the area. It showed the SUV moving down streets, pulling into a parking lot, backing out of that parking lot, and proceeding to an adjacent parking lot owned by a funeral home.

{¶40} The jury saw footage of a Cadillac Escalade with blue lights moving through the funeral home's parking lot while a figure pushing a stroller quickly walked down a sidewalk across the street. The footage showed the Escalade accelerating through the parking lot and crossing the street as the figure with the stroller began to run. The footage then showed the SUV striking the figure pushing the stroller. The female passenger in Allen's SUV told the jury that Allen used his SUV to hit the man who had engaged in a confrontation with him outside the bar. There was evidence that the man with the stroller was H.L. and that his twenty-one-month-old daughter, A.T., was thrown from her stroller and killed when struck by Allen's SUV.

{¶41} Viewing the evidence in a light most favorable to the prosecution, we must conclude that a rational trier of fact could have found that the State proved the element of prior calculation and design beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. As previously noted, prior calculation and design requires more than "instantaneous deliberation[,]" *Cotton*, 56 Ohio St.2d at 11, but it "does not mean that a considerable amount of time must lapse between formulating the plan and committing the murder." *Roberts*, 2025-Ohio-5120, at ¶ 145. The evidence showed Allen was angry with H.L. because the two had an altercation. Allen chased H.L. on foot before returning to his SUV. He then spent time driving around the area looking for H.L. Based on the footage presented, the jury could have found

that Allen spotted H.L. at a distance before rapidly accelerating and using his SUV to strike him down. The jury reasonably could have concluded that evidence of prior calculation and design existed based on the altercation that occurred and the effort Allen then made to hunt down H.L. using his SUV. *See State v. Conway*, 2006-Ohio-791, ¶ 46 (prior calculation and design existed where defendant's actions "went beyond a momentary impulse and show[ed] that he was determined to complete a specific course of action"); *State v. Coley*, 93 Ohio St.3d 253, 264 ("[P]rior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes."). Allen has not shown that his aggravated murder convictions under R.C. 2903.01(A) are based on insufficient evidence. Accordingly, his second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

> A TRIAL COURT VIOLATES A DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL PURSUANT TO THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION[] WHEN GUILTY VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶42} In his third assignment of error, Allen argues that his aggravated murder convictions are against the manifest weight of the evidence. For the following reasons, we reject his argument.

{¶43} A conviction that is supported by sufficient evidence may still be found to be against the weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id.*

{¶44} While Allen's brief includes the manifest weight standard, he has not presented a manifest weight argument in support of his assignment of error. His only argument is that there was no evidence of prior calculation and design. Indeed, the short discussion he has included in support of his manifest weight challenge is identical to the short discussion he included in support of his sufficiency challenge. He has not developed any argument based upon credibility or the weight to be given to any piece of evidence or testimony. *See* App.R. 16(A)(7). In fact, he has not cited any portion of the record or authority in support of his position.

{¶45} This Court will not create a manifest weight argument on Allen's behalf. *See State v. Austin*, 2025-Ohio-4543, ¶ 40 (9th Dist.); *State v. Filip*, 2017-Ohio-5622, ¶ 42 (9th Dist.). Given his limited argument, and following a thorough review of the record, we cannot say the jury lost its way in finding him guilty. Accordingly, his third assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY IMPROPERLY GIVING IMPROPER TRANSFERRED INTENT INSTRUCTION IN RESPONSE TO JURY QUESTION.

{¶46} In his fifth assignment of error, Allen argues the trial court misstated the law when it answered a jury question about transferred intent. For the following reasons, we reject his argument.

{¶47} "While the precise language of a given jury instruction is a matter of discretion for the trial court, '[a] trial court must charge a jury with instructions that are a correct and complete statement of the law.'" *State v. Swiger*, 2013-Ohio-3519, ¶ 8 (9th Dist.), quoting *State v. Estright*,

2009-Ohio-5676, ¶ 46 (9th Dist.). "Whether the jury instructions correctly state the law is a question that is reviewed de novo." *State v. Dean*, 2015-Ohio-4347, ¶ 135.

{¶48} When the trial court instructed the jury on aggravated murder, it included a transferred intent instruction. The transferred intent instruction followed the court's instruction on purpose and the purpose to cause the death of another. The transferred intent instruction provided that

> [t]he purpose required is to cause the death of another, not any specific person. If an act missed the person intended, but caused the death of another, the element of purpose remains and the offense is complete as though the person for whom the act was intended had died.

The court did not repeat or refer to the transferred intent instruction when instructing the jury on the specifications linked to the aggravated murder charges. Regarding A.T., the specifications asked the jury to make two findings. First, the jury was asked to decide whether the State proved that A.T.'s aggravated murder "was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by [Allen]." Second, the jury was asked to decide whether the State proved that Allen, "in the commission of the aggravated murder, purposefully caused the death of [A.T.] and that [A.T.] was under 13 years of age at the time of the commission[,] . . . and [Allen] was the principal offender[,] . . . or if not the principal offender, committed the aggravated murder with prior calculation and design."

{¶49} During deliberations, the jury submitted a question regarding the instructions. The jury asked the court to "confirm for the specs under the count, when discussing 'purposely,' the definition . . . regarding transfer does apply." The court's staff asked the jury to clarify what count they meant, and the jury responded counts one and two. Those two counts were for the aggravated murder of A.T. under R.C. 2903.01(C) and 2903.01(A), respectively.

{¶50}   The trial court immediately responded to the jury's question and answered it in the affirmative.  The court then determined that it ought to have given the parties an opportunity to respond before answering the jury's question.  Consequently, it instructed the jury to pause its deliberations as to the two aggravated murder counts and specifications until it could meet with the attorneys to discuss the question that had been posed.

{¶51}   When the parties came before the court, the State agreed with the answer the court had provided the jury.  Meanwhile, the defense took the position that the transferred intent instruction did not apply to the specifications.  The court listened to arguments from both parties and gave them additional time to research the issue.  Subsequently, the court determined that the original answer it gave the jury would stand.

{¶52}   Allen argues that the trial court failed to properly instruct the jury on the law.  According to Allen, the court committed reversible error "by one giving the transferred intent instruction for transferred intent; and [] two, giving instruction that purposefully applies to Count 1 and 2 of the Indictment."  Apart from citing general case law on jury instructions, he has not offered any authority in support of his specific arguments.

{¶53}   "The doctrine of transferred intent is firmly rooted in Ohio law."  *State v. Sowell*, 39 Ohio St.3d 322, 332 (1988).  The doctrine applies to the crime of aggravated murder.  *State v. Stoddard*, 2015-Ohio-3750, ¶ 26 (9th Dist.).  "'If one purposely causes the death of another and the death is the result of a scheme designed to implement the calculated decision to kill someone other than the victim, the offender is guilty of aggravated murder . . . .'" *State v. Powell*, 2012-Ohio-2577, ¶ 171, quoting *State v. Solomon*, 66 Ohio St.2d 214 (1981), paragraph one of the syllabus.

{¶54} To the extent Allen appears to argue that the trial court erred by giving any transferred intent instruction, we reject his argument. The doctrine of transferred intent applies to aggravated murder, *see Stoddard* at ¶ 26, and Allen has not offered any authority, analysis, or explanation as to why the instruction was inappropriate as to the aggravated murder counts. *See* App.R. 16(A)(7). To the extent Allen seeks to argue that it was error for the court to tell the jury that the transferred intent instruction applied to the specifications in counts one and two, we likewise reject his argument. That is because, even if we were to assume the court erred in that regard, the record does not support the conclusion that the error prejudiced Allen. *See State v. Wilks*, 2018-Ohio-1562, ¶ 115-118; *State v. Collins*, 2001 WL 345347, *3-4 (9th Dist. Apr. 10, 2001).

{¶55} The evidence showed that A.T. was only twenty-one months old at the time of her death and was riding in a stroller. Because Allen and H.L. first encountered one another on a sidewalk just outside a bar, it was not dark in their immediate vicinity or otherwise difficult to see. Individuals who witnessed their altercation saw A.T. in her stroller. Moreover, the jury heard testimony that H.L. picked up the stroller and ran with it as Allen chased him through the parking lot on foot. Allen's female passenger testified that, before Allen accelerated and struck the victims, his headlights illuminated them. Surveillance footage showed H.L. pushing A.T.'s stroller to the east while Allen approached them from the north. Their respective positions meant Allen would have had a sideways view of H.L., the stroller, and A.T. before using his SUV to run them down. Based on the foregoing, there was sufficient evidence presented to the jury from which it could have found that Allen purposely (1) killed H.L. and A.T. as part of a course of conduct, and (2) caused A.T.'s death as the principal offender when she was under 13 years of age. As such, Allen's fifth assignment of error is overruled.

**ASSIGNMENT OF ERROR VIII**

THE TRIAL COURT AND ITS STAFF HAD IMPROPER COMMUNICATION WITH JURY OUTSIDE PRESENCE OF ALLEN AND DEFENSE COUNSEL AND THAT IS PREJUDICIAL ERROR AND WARRANTS NEW TRIAL.

{¶56} In his eighth assignment of error, Allen argues that he was deprived of a fair trial when the court and its staff communicated with the jury outside the presence of Allen or any of the attorneys. Upon review, we reject his argument.

{¶57} Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist. 1995). A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *Bray*, 2004-Ohio-1067, at ¶ 12 (9th Dist.). This Court may not reverse the judgment of the trial court based on plain error, unless appellant has established that the outcome of the trial clearly would have been different but for the alleged error. *State v. Kobelka*, 2001 WL 1379440, *2 (9th Dist. Nov. 7, 2001), citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996).

{¶58} Allen argues that error occurred when the trial court and its staff communicated with the jury without consulting him or the attorneys. The first communication occurred when the jurors asked whether they could have a transcript of a witness' testimony, and the court answered no. The second communication occurred when the jury asked about the transferred intent instruction. *See* Discussion of Assignment of Error Five, *supra*. The court's staff asked the jury to clarify which count(s) they were asking about, and the court then answered the jury's question without consulting the attorneys. As noted, the court later instructed the jury to pause its

deliberations, explained to the parties what had transpired, and gave the parties an opportunity to present arguments.

{¶59} A review of the record reveals that Allen never objected based on the trial court or its staff improperly communicating with the jury. He had the opportunity to do so when the court met with the attorneys, explained what had transpired, and gave them the opportunity to present arguments. While a forfeited objection still may be raised through a claim of plain error, Allen has not done so. This Court will not create a plain error argument on his behalf. *See State v. Morlan*, 2024-Ohio-5296, ¶ 9 (9th Dist.). Accordingly, his eighth assignment of error is overruled.

## ASSIGNMENT OF ERROR VII

THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IS VIOLATED
WHEN COUNSEL'S DEFICIENT PERFORMANCE RESULTS IN PREJUDICE
TO THE DEFENDANT IN VIOLATION OF THE SIXTH AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE
I OF THE OHIO CONSTITUTION.

{¶60} In his seventh assignment of error, Allen argues that he received ineffective assistance of counsel. For the following reasons, we reject his argument.

{¶61} To prevail on a claim of ineffective assistance of counsel, Allen must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, Allen must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, he must demonstrate that, but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith* at 534. "This Court need not address both prongs of the *Strickland* test if the

appellant fails to satisfy either prong." *State v. Gannon*, 2020-Ohio-3075, ¶ 23 (9th Dist.), citing *State v. Ray*, 2005-Ohio-4941, ¶ 10 (9th Dist.).

{¶62} Allen's ineffective assistance of counsel argument consists of the ineffective assistance standard and a single paragraph listing seven ways in which his trial attorneys were allegedly ineffective. He claims his attorneys failed to: (1) subpoena witnesses; (2) hire experts for the trial phase, including a reconstruction expert; (3) replace a sleeping juror; (4) object to certain photographs of a license plate; (5) request an instruction on voluntary manslaughter; (6) attach affidavits to his motion for new trial; and (7) "file and memorialize speedy trial breach[.]" Yet, his claims are conclusory and devoid of analysis. He has failed to set forth any law in support of six of his arguments and one statement of law in support of the remaining argument. He has not provided citations to the record or context for any of the alleged errors that occurred. *See* App.R. 16(A)(7). He has not explained how his attorneys' performance was objectively deficient. *See Keith* at 534. Nor has he explained how any of his attorneys' alleged errors affected the outcome in this matter. *See id.*

{¶63} "An appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority." *Watson*, 2009-Ohio-330, at ¶ 5 (9th Dist.). It is not the duty of this Court to construct arguments on an appellant's behalf. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 1998 WL 224934, *8 (9th Dist. May 6, 1998). Because Allen has failed to develop a meaningful argument in support of his assignment of error, we reject his unsupported claim that he received ineffective assistance of counsel. *See State v. Smith*, 2017-Ohio-8680, ¶ 15 (9th Dist.); *Baskerville*, 2017-Ohio-4050, ¶ 52 (9th Dist.). His seventh assignment of error is overruled.

**ASSIGNMENT OF ERROR VI**

THE TRIAL COURT ERRED OR COMMITTED PLAIN ERROR BY IMPOSING CONSECUTIVE SENTENCES BECAUSE ITS FINDINGS OF NECESSITY UNDER R.C. 2929.14(C)(4) CLEARLY AND CONVINCINGLY LACK SUPPORT IN THE RECORD[.]

**{¶64}** In his sixth assignment of error, Allen argues the trial court erred by ordering him to serve consecutive sentences. According to Allen, the court failed to make the required statutory findings in open court at his sentencing hearing. Upon review, we reject his argument.

**{¶65}** "In order to impose consecutive sentences, 'a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry . . . .'" *State v. Fazenbaker*, 2021-Ohio-3447, ¶ 28 (9th Dist.), quoting *State v. Bonnell*, 2014-Ohio-3177, syllabus. While "a trial court must state the required findings as part of the sentencing hearing[,] . . . a word-for-word recitation of the language of the statute is not required[.] [A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *State v. Bennett*, 2018-Ohio-3935, ¶ 10 (9th Dist.), quoting *State v. Blackert*, 2015-Ohio-2248, ¶ 10 (9th Dist.).

**{¶66}** R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses

so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Notably, while the trial court must make the findings mandated by R.C. 2929.14(C)(4), it "has no obligation to state reasons to support its findings." *Bonnell* at syllabus.

{¶67} When announcing Allen's sentence in open court, the trial court indicated that it had considered all relevant sentencing factors, including the seriousness and recidivism factors. The court imposed consecutive prison terms, finding

[t]hat it is necessary to protect the public and punish you and it is not disproportionate with the seriousness of the conduct and the danger that you pose to the public, and there are two or more multiple offenses – three different offenses that were committed as a single course of conduct, and the harm was great and so unusual that a single prison term does not seem to adequately reflect the seriousness of the conduct.

The court also commented extensively on the heinousness of Allen's crimes and his failure to accept responsibility for them.

{¶68} Allen argues that the trial court failed to make the findings required by R.C. 2929.14(C) in open court because the court said it did not "seem" as if a single prison term would adequately reflect the seriousness of his conduct. As noted, however, a word-for-word recitation of the statutory language is not required so long as the record supports the conclusion that the court engaged in the correct analysis and evidence exists to support the statutory findings. *Bennett*, 2018-Ohio-3935, at ¶ 10 (9th Dist.), quoting *Blackert*, 2015-Ohio-2248, at ¶ 10 (9th Dist.). We will not conclude that the trial court's use of the word "seem" detracted from its findings and analysis such that it failed to comply with R.C. 2929.14(C) in issuing its decision on the record in open court.

{¶69} Allen also argues that the record "suggests" the trial court may have relied upon inappropriate victim-impact statements. He indicates that the sentencing opinion "does refer to the victim-impact statements," but he has not provided any citation for that reference. *See* App.R. 16(A)(7). The record also reflects that he never objected at any point based on the content of the victim-impact statements or the trial court's alleged reliance on those statements. Apart from not supporting his argument with citations to the record, Allen forfeited this issue by not raising it at sentencing. Because he has not argued plain error, we decline to consider it. *See State v. Shealy*, 2020-Ohio-1019, ¶ 32 (9th Dist.). His sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR IX

THE COURT IMPROPERLY DENIED THE DEFENDANT'S MOTION FOR A
NEW TRIAL PURSUANT TO RULE 33(A)(4).

{¶70} In his ninth assignment of error, Allen argues the trial court erred by denying his motion for a new trial. Upon review, we reject his argument.

{¶71} Relevant to this appeal, a defendant may move for a new trial when his substantial rights have been materially affected by (1) misconduct of the jury, the prosecuting attorney, or a state's witness, Crim.R. 33(A)(2); or (2) a verdict that is contrary to law, Crim.R. 33(A)(4). "This Court generally reviews a trial court's decision to deny a motion for new trial for an abuse of discretion." *State v. Mosley*, 2020-Ohio-5047, ¶ 40 (9th Dist.). Likewise, we review for an abuse of discretion a trial court's decision whether to hold a hearing on a motion for new trial. *State v. Powe*, 2019-Ohio-5332, ¶ 9 (9th Dist.). An abuse of discretion implies the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶72} Allen's motion for new trial alleged misconduct on the part of the jury and the prosecutor under Crim.R. 33(A)(2). It alleged that the prosecutor (1) left gruesome photos on

display for an excessive amount of time; (2) referred to Allen by the wrong name; (3) provided the jury edited videos rather than the completed versions; and (4) tampered with versions of license plate photos shown to the jury. As to juror misconduct, the motion alleged that Juror 1 fell asleep during the trial.

{¶73} Allen also sought a new trial under Crim.R. 33(A)(4), arguing that his aggravated murder verdicts were not supported by sufficient evidence. His motion alleged that the State failed to prove prior calculation and design because there were no time stamps on any of the surveillance footage it produced and the SUV shown in the footage was not identical to Allen's SUV.

{¶74} The trial court denied Allen's motion without holding a hearing. In doing so, it explained its basis for rejecting each of his arguments. As to the prosecutorial misconduct allegations, the court found that: (1) it ruled on the admission of each photo before it was displayed to the jury, and no misconduct occurred; (2) Allen was not prejudiced when the prosecutor called him by the wrong name one time outside the presence of the jury; (3) the jury was provided with both the complete and edited versions of the surveillance footage shown at trial; and (4) the court was unaware of any alteration to the license plate photos the State produced, and Allen failed to offer proof that any such alteration had occurred. As to the juror misconduct allegation, the court found that Juror 1 appeared sleepy on one day of trial, the court spoke with Juror 1, the parties discussed the matter, the defense did not seek to remove the juror, and the issue was waived. As to Allen's sufficiency arguments, the court found that there was sufficient evidence of prior calculation and design, Allen never objected to any footage based on the lack of a time stamp, the State authenticated the times associated with the footage during trial, and any argument about the SUV in the footage not matching Allen's SUV was a question of fact for the jury.

{¶75} Allen argues the trial court erred when it denied his motion for new trial without holding a hearing. Yet, his brief is devoid of any supporting analysis or discussion. He merely recites each of the arguments his trial counsel raised in his motion for new trial. His brief does not include any case law in support of his individual arguments. It does not include any citations to the record. Moreover, Allen has not addressed any of the reasons the trial court offered for rejecting each of his arguments.

{¶76} "An appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority." *Watson*, 2009-Ohio-330, at ¶ 5 (9th Dist.), citing App.R. 16(A)(7). We will not construct an argument on an appellant's behalf. *Drummer*, 2025-Ohio-4710, at ¶ 12 (9th Dist.); *Baskerville*, 2017-Ohio-4050, at ¶ 52 (9th Dist.). Because Allen has not provided this Court with an analysis in support of his assignment of error, we decline to perform an analysis on his behalf. As such, his ninth assignment of error is overruled.

## ASSIGNMENT OF ERROR X

WHERE CUMULATIVE ERRORS OCCURRED DURING A TRIAL, ALLEN IS DEPRIVED OF THE RIGHT TO A FAIR TRIAL AND FAIR CONSIDERATION OF THE APPROPRIATENESS OF IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16. (Sic.)

{¶77} In his tenth assignment of error, Allen argues that cumulative errors deprived him of a fair trial. "Under the cumulative error doctrine, a conviction may be reversed when the cumulative effect of errors deprives a defendant of the constitutional right to a fair trial even though none of the errors, in isolation, was prejudicial." *State v. Howse*, 2024-Ohio-503, ¶ 30 (9th Dist.). "In the absence of multiple errors, the cumulative error doctrine does not apply." *Id.* Because

Allen has not demonstrated the presence of multiple errors, the cumulative error doctrine is inapplicable. Accordingly, his tenth assignment of error is overruled.

## III.

{¶78} Allen's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

DONNA J. CARR
FOR THE COURT

HENSAL, J.
FLAGG LANZINGER, J.
<u>CONCUR.</u>

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.